CASE NO.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE RELIANCE MEDICAL SYSTEMS, LLC; APEX MEDICAL
TECHNOLOGIES, LLC; KRONOS SPINAL TECHNOLOGIES, LLC;
BRET BERRY AND ADAM PIKE,
*Petitioners,*

v.

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA,
*Respondent,*

UNITED STATES OF AMERICA, JOHN HOFFMAN AND
ARIA O. SABIT, M.D.
*Real Parties in Interest.*

FROM A DECISION OF THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
DEAN D. PREGERSON, DISTRICT JUDGE – CASE NO. 2:14-CV006979-DDP-PJW

# PETITION FOR WRIT OF MANDAMUS DIRECTED TO THE
# UNITED STATES DISTRICT COURT FOR THE CENTRAL
# DISTRICT OF CALIFORNIA

HOOPER LUNDY & BOOKMAN, P.C.
PATRIC HOOPER
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TELEPHONE: (310) 551-8111
FACSIMILE: (310) 551-8181

ATTORNEYS FOR PETITIONERS

1185328.1

## CORPORATE DISCLOSURE STATEMENT

None of the petitioners in this action is a corporation or a publicly traded company.

## CERTIFICATE OF INTEREST PARTIES

The District Court Action from which this petition arises is entitled: *United States of America v. Reliance Medical Systems, LLC, Apex Medical Technologies, LLC, Kronos Spinal Technologies, LLC, Bret Berry, John Hoffman, Adam Pike, and Aria O. Sabit, M.D.*, pending in the United States District Court for the Central District of California, Western Division, District Court No. 14-CV-06979-DDP (PJWx), the Honorable Dean D. Pregerson, presiding.

Petitioners

Petitioners are Defendants Reliance Medical Systems, LLC, Apex Medical Technologies, LLC, Kronos Spinal Technologies, LLC, Bret Berry, and Adam Pike. Petitioners are represented by:

> PATRIC HOOPER (Bar No. 57343)
> **HOOPER, LUNDY & BOOKMAN, P.C.**
> 1875 Century Park East, Suite 1600
> Los Angeles, CA 90067
> Telephone: (310) 551-8111
> Facsimile: (310) 551-8181
> E-Mail: phooper@health-law.com

Respondent

Respondent is United States District Court for the Central District of California.

Real Parties In Interest

The Real Parties In Interest are United States of America, John Hoffman and Aria O. Sabit, M.D.

Real Party In Interest United States of America is represented by:

> DAVID M. FINKELSTEIN
> ARTHUR S. DIO
> ROHITH V. SRINIVAS
> **U.S. DEPARTMENT OF JUSTICE**
> P.O. Box 261
> Ben Franklin Station
> Washington, DC 20044
> Telephone: (202) 616-2971
> Facsimile: (202) 307-3852
> E-Mail: david.m.finkelstein@usdoj.gov, arthur.di.dio@usdoj.gov, rohith.v.srinivas@usdoj.gov

Real Party In Interest John Hoffman is represented by:

> MICHAEL C. GROSS
> **GROSS & ESPARZA, PLLC**
> 106 S. St. Mary's, Suite 260
> San Antonio, TX 78205
> Telephone: (210) 354-1919
> Facsimile: (210) 354-1920
> E-Mail: lawofcmg@gmail.com

Real Party In Interest Aria O. Sabit, M.D. is represented by:

> JONATHAN B. FRANK
> OF COUNSEL TO JACKIER GOULD, P.C.
> 121 West Long Lake Road, 2nd Floor
> Bloomfield Hills, MI 48304
> Telephone: (248) 433-2589
> Facsimile: (248) 642-5241
> E-Mail: frank@jackiergould.com

> LOUIS H. DE HAAS
> LA FOLLETTE, JOHNSON DE HASS, FESLER & AMES
> 865 S. Figueroa, 32nd Floor
> Los Angeles, CA 90017
> Telephone: (213) 426-3600
> Facsimile:
> E-Mail: scrawford@ljdfa.com, ldehaas@ljdfa.com

C-3

Dated: May 7, 2015          Respectfully submitted,


By:       s/ Patric Hooper
                         PATRIC HOOPER
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 551-8111
Facsimile: (310) 551-8181

*Counsel for Petitioners Reliance Medical Systems, LLC, Apex Medical Technologies, LLC, Kronos Spinal Technologies, LLC, Bret Berry, and Adam Pike*

# TABLE OF CONTENTS <span style="float:right">Page</span>

I.    INTRODUCTION ............................................................................1

II.   RELIEF SOUGHT ..........................................................................4

III.  ISSUE PRESENTED .......................................................................4

IV.  STATEMENT OF FACTS AND PROCEDURAL HISTORY .....................4

    A.    Background and Context.......................................................4

    B.    The Civil Case Proceedings ..................................................8

V.   THIS COURT SHOULD ISSUE A WRIT REQUIRING THE
DISTRICT COURT TO DISMISS THE COMPLAINT ............................12

    A.    The Standards for Granting Mandamus Relief ....................12

    B.    The Applicable Fundamental Principles of Law..................13

    C.    Petitioners Have No Means Other than this Petition to Obtain
the Relief Requested............................................................15

    D.    The Ongoing Irreparable Harm Being Suffered by Petitioners
Cannot Be Remedied on Appeal .........................................16

    E.    The District Court Erred by Vacating the Motion to Dismiss
Rather than Granting It........................................................18

    F.    The District Court's Ruling Raises Important Issues About
Parallel Proceedings in Health Care Fraud Investigations.................26

VI.  CONCLUSION..............................................................................26

## TABLE OF AUTHORITIES    Page(s)

### FEDERAL CASES

*Batzel v. Smith*,
    333 F. 3d 1018 (9th. Cir. 2003) .......................................................................16

*Bauman v. U.S. Dist. Court*,
    557 F. 2d 650 (9th. Cir. 1977) ........................................................................12

*Board of Regents v. Roth*,
    408 U.S. 564 (1972).........................................................................................23

*Briscoe v. Kusper*,
    435 F. 2d 1046 (7th Cir. 1971) .......................................................................22

*Conant v. Walters*,
    309 F. 3d 629 (9th Cir. 2002) .........................................................................14

*Costa v. Afgo Mechanical Services, Inc.*,
    237 F.R.D. 21 (E.D. N.Y. 2006)......................................................................20

*Erickson v. United States ex rel. Dept't of Health & Human Servs.*,
    67 F. 3d 858 (9th Cir. 1995) .....................................................................24, 25

*Greater New Orleans Fair Housing Action Center v. Ditta*,
    2013 WL 5797728 (E.D. La. October 28, 2013).............................................21

*Hanlester Network v. Shalala*,
    51 F. 3d 1390 (9th Cir. 1995) ...................................................................*passim*

*Keating v. Office of Thrift Supervision*,
    45 F. 3d 322 (9th Cir. 1994) ...........................................................................14

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
    883 F. Supp. 488 (C.D.Cal. 1995) ..................................................................21

*Mortgages, Inc. v. United States Dist. Court*,
    934 F. 2d 209 (9th Cir. 1991) .........................................................................13

*Nixon v. Warner Commc'ns, Inc.*,
    435 U.S. 589 (1978).........................................................................................22

*Olmstead v. United States*,
    277 U.S. 438 (1928).........................................................................................19

**TABLE OF AUTHORITIES** (cont.)                    Page(s)

*Perrone v. F.B.I.*
    908 F. Supp. 24 (D.D.C. 1995)............................................................14

*Perry v. Schwarzenegger*,
    591 F. 3d 1147 (9th Cir. 2010) ...................................................12, 13

*Press-Enter. Co. v. Super. Ct. of Cal.*,
    464 U.S. 501 (1984)............................................................................22

*United States v. Porter*,
    591 F. 2d 1048 (5th. Cir. 1979) ..........................................................5

*United States v. Quest Diagnostics*,
    734 F. 3d 154 (2nd Cir. 2013) ...........................................................15

*Vanelli v. Reynolds*,
    667 F. 2d 773 (9th Cir. 1982) ......................................................24, 25

*Wehling v. Columbia Broad Sys,.*
    608 F. 2d 1084 (5th Cir. 1979) ..........................................................23

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971)............................................................................23

## FEDERAL STATUTES

31 U.S.C. §§ 3729 *et seq.*................................................................*passim*

42 U.S.C. § 1320a-7b(b) ................................................................*passim*

42. U.S.C. § 1320a-7b(g) ..........................................................................5

## FEDERAL RULES

Fed.R.Civ.P. 1 ..............................................................................19

Fed.R.Civ.P. 7(b) ..........................................................................21

Fed.R.Civ.P. 12(b)(6).......................................................................9

Fed.R.Civ.P. 26(b)(3).......................................................................11

Fed.R.Civ.P. 26(b)(3)(C) ............................................................20, 21

<u>**TABLE OF AUTHORITIES**</u> **(cont.)** <u>**Page(s)**</u>

Local Rule 7-19......................................................................................21

Local Rule 79-5......................................................................................21

### CONSTITUTIONAL PROVISIONS

First Amendment....................................................................................22

I.    **INTRODUCTION**

The instant lawsuit, filed by the United States under the civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"), is a high profile case in the healthcare industry.[1]  The allegations in the FCA complaint pertain to the Medicare Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), ("AKS").  Thus, this matter involves some of the same AKS issues that were addressed twenty years ago by this Court in the seminal health care fraud enforcement case of *Hanlester Network v. Shalala,* 51 F. 3d 1390 (9th Cir. 1995) ("*Hanlester*"), the government's test case for determining whether healthcare joint ventures involving doctors violated the AKS.

This time, however, the Department of Justice ("DOJ"), as counsel for the United States, is pursuing purportedly "parallel" criminal and civil enforcement actions under the AKS against the defendants in the FCA action, including petitioners Adam Pike and Bret Berry.  This petition challenges the legality of DOJ's tactics in pursuing its dual actions.

On April 30, 2015, the District Court issued the order sought to be reviewed (Exhibit A of the accompanying exhibits) (1) granting DOJ's December 22, 2014 motion and *ex parte* application to stay further proceedings in the FCA case, and (2) "vacating" four other pending motions, including petitioners' December 22,

---

[1]  As a result of a September 8, 2014 press release issued by the government, media coverage of the lawsuit has been extensive.  *See* footnote 4.

1

2014 motion to dismiss the FCA case. The Court appears to have granted the stay and "vacated" the motion to dismiss due to the pendency of an ongoing criminal investigation of petitioners and others, as explained in declarations submitted by DOJ on an *ex parte* basis, which were reviewed by the Court *in camera.*[2]

Petitioners thus have had no way of knowing or refuting any adverse allegations about them contained in the *in camera* declarations. The same is true about a July 26, 2011 audio recording of a conversation with petitioners Pike and Berry made by a "confidential informant," which DOJ has refused to disclose to petitioners for more than two years because DOJ's Criminal Division insists the recording must remain confidential to protect the integrity of its ongoing criminal investigation.

This unfortunate situation of being the target of a (1) secret criminal investigation, (2) a secret audio recording, and (3) secret *ex parte* communications with the Court might be reasonable under some very limited circumstances. For example, petitioners acknowledge DOJ's need to maintain the confidentiality of information during the course of a criminal investigation. However, under the circumstances here, there are compelling reasons why DOJ's delay and tactics

---

[2] Petitioners says "appears to have granted the stay [etc.]" because the April 30, 2015 order gives no reason or explanation for any of the Court's April 30 rulings.

2

should not be tolerated and why the District Court should have granted petitioners'

motion to dismiss the civil action rather than vacating it.

These circumstances include:

(1) That DOJ's Civil Division filed its civil complaint in this action on

September 8, 2014 actually or constructively knowing that its Criminal Division

intended to stay the civil proceedings and use the content of the July 26, 2011

recording to further its ongoing criminal investigation;

(2) That DOJ's Civil Division nevertheless included in its civil complaint

more than 20 different quotes from the July 26, 2011 recording to make its most

damning allegations against petitioners under the AKS, and issued a press release

that same day flaunting its lawsuit and the existence of the secret recording; and

(3) DOJ's Civil Division surreptitiously used the July 26, 2011 recording to

depose petitioner Pike in March 2013 (during the Civil Division's investigation of

the FCA matter) without disclosing the existence of the recording or the criminal

investigation to Mr. Pike or his attorney.

DOJ's tactics of (1) publishing selective excerpts of the July 26, 2011

recording coupled with its refusal to disclose the recording to petitioners, and (2)

using *ex parte* and *in camera* procedures to delay producing the recording coupled

with the resulting harm to petitioners Pike's and Berry's reputations, ability to

make a living, and general well-being, are inconsistent with the Federal Rules of

Civil procedure, irreparably taints the truth-finding process, and denies petitioners due process of the law.

## II.   <u>RELIEF SOUGHT</u>

Petitioners request this Court to issue a writ of mandamus directing the District Court to vacate its April 30, 2015 order "vacat[ing]" petitioners' motion to dismiss the complaint and to enter a new order dismissing the civil complaint with prejudice or, at a minimum, dismissing the civil case without prejudice pending the outcome of the criminal investigation.

## III.   <u>ISSUE PRESENTED</u>

The issue to be resolved by this Court is whether DOJ's tactics in this case, including but not limited to publicizing and using selected excerpts from the recording to examine Mr. Pike while at the same time withholding the recording from petitioners and depriving them of a meaningful opportunity to refute and respond to the excerpts, violate the Federal Rules of Civil Procedure, irreparably damages the truth finding process in this case, and deprive petitioners of due process of the law.

## IV.   <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

### A.   <u>Background and Context</u>

Ethical debates over physician ownership of health care joint ventures are a matter of longstanding.  Despite the fact that the courts should "not function to

evaluate" such ethical debates when applying the AKS (*United States v. Porter,* 591 F. 2d 1048, 1058 (5th. Cir. 1979)), DOJ persists in asking the courts to do so by trying to criminalize the conduct of the participants in such joint ventures under the AKS, a criminal statute. And, as a result of a 2010 amendment to the AKS, violations of the AKS may now constitute false claims under the FCA. *See* 42. U.S.C. § 1320a-7b(g).

In *Hanlester,* the first case challenging a "physician self-referral joint venture," 51 F. 3d at 1396, the Office of Inspector General of Health and Human Services and DOJ argued that physician-owned joint ventures that operated clinical laboratories violated the AKS because the doctors/owners referred laboratory specimens to the laboratories and received ownership distributions from the joint ventures. Under this arrangement, the more specimens the doctors sent to the laboratories, the greater the profits of the joint ventures, and the higher the ownership distributions to the referring doctors. In *Hanlester,* this Court considered a variety of factors in determining whether such a joint venture violated the AKS due to the profit distributions the joint ventures paid to the doctors.

This Court began with the proposition that nothing in the AKS, itself, prohibits joint venture arrangements. 51 F. 3d at 1396. Thus, the Court had to resort to the Statute's legislative history to determine the meaning of its words, including "inducement" and other critical elements of the statute. The Court held

that the AKS did not prohibit a joint venture from encouraging doctors/owners to use the laboratory for their testing and did not prohibit the doctors from profiting from the joint venture arrangement. At the same time, the Court cautioned that a joint venture could not condition ownership in the joint venture on a promise to refer patient specimens to the joint venture's laboratory without risking running afoul of the AKS.[3] 51 F. 3d at 1399.

In February 2006, the California Attorney General issued an opinion on the legality of physician joint ventures that manufactured and distributed spinal implant devices that the doctors/owners of the joint ventures used in surgeries on their spine patients. In this 15-page opinion (Exhibit B), which cited *Hanlester* and other federal cases interpreting the AKS, the California Attorney General concluded that "where a physician may prescribe for a patient a medical device that is distributed by a company in which the physician has an ownership interest, the company generally may solicit physicians as investors in the company." The same year the Attorney General published this opinion, petitioners Pike and Berry formed Reliance Medical Systems, LLC. ("Reliance"), one of the defendants/petitioners in this case.

---

[3] Importantly, however, even if a defendant engaged in conduct that could constitute improper inducement, the government would still have to prove the defendant did so "with the specific intent to violate the law." 51 F. 3d 1400.

Reliance is FDA cleared to manufacture and sell spinal implant devices. Petitioners also formed companies that joint ventured with spine surgeons who designed the devices that were manufactured by Reliance and sold to hospitals for spinal surgeries. As in *Hanlester,* doctors/owners of the joint ventures received profit distributions in accordance with their ownership percentages in the joint ventures.

Companies like Reliance and the joint ventures presented stiff competition to the large medical device manufacturing companies, such as Medtronic and Stryker, that dominated the medical device field. Thus, it is hardly surprising that in 2011, a Senate Finance Committee minority staff, headed by Senator Hatch, began "an inquiry into the complicated issue of physician owned distributorships" ("PODs"). The Hatch Committee studied various POD business models. In June 2011, the Committee issued a report ("the Hatch Report"), Exhibit C, noting the disagreement of "two major national law firms" which "had come down squarely on opposite sides" of the legality and efficacy of PODs. Moreover, the "most consistent comment from individuals interviewed by the Committee on this topic was 'it was unclear to them if PODs were legal or illegal.'" Report, page 6.

On July 26, 2011, shortly after the Hatch Report was published, an unidentified confidential FBI source met with petitioners Pike and Berry in Southern California to discuss investment opportunities in one of their physician

owned spinal implant companies. As discussed below, DOJ claims this recording was made by an FBI informant and is being used by DOJ in its ongoing criminal investigation of petitioners and others.

Petitioners first learned of this same audio recording in May 2013, two months after DOJ's Civil Division had used excerpts from the recording in deposing petitioner Pike without first advising him of the existence of (1) the recording and (2) a criminal investigation based on the recording. Petitioners do not know how or when the Civil Division came into possession of the July 26, 2011 audio recording because DOJ refuses to divulge such information. However, as soon as petitioners learned of its existence, they requested a copy. Pike's December 22, 2014 Declaration, paras. 4-5, Exhibit D. Despite many such requests, DOJ has yet to produce the recording.

### B.  The Civil Case Proceedings

On September 8, 2014, DOJ's Civil Division filed an FCA complaint (Exhibit E) against petitioners and others. In its complaint, DOJ contends that petitioners gave doctors kickbacks in the form of ownership distributions to induce them to recommend that hospitals purchase Reliance-manufactured implant devices to be used in the doctors' spinal surgeries. At least 20 of the paragraphs in the complaint, including paragraphs 145-150, 152-153, 155, 164-165, 183-184, 197-198, 202, 206, and 218, quote directly from the July 26, 2011 audio recording.

8

The very same day it filed its lawsuit, DOJ issued a press release announcing the filing of the lawsuit and disclosing the existence of the audio recording and quoting therefrom.  Exhibit F.[4]

Petitioners promptly moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6).  On November 5, 2014, the District Court denied the motion concluding that if the allegations in the complaint are proven, defendants' conduct might have "crossed the line" of illegal conduct established in *Hanlester*.  *United States v. Reliance Medical Systems,* 2014 WL 5761113 at *3-*4, Exhibit G.  In support of this conclusion, the Court referred to many of the paragraphs in the complaint quoting from the July 26, 2011 recording.

The petitioners timely answered the complaint denying the material allegations of wrongdoing and affirmatively alleging DOJ misconduct, including its selective publications of excerpts from the recording.  DOJ and the petitioners filed four different motions on December 22, 2014, including DOJ's motion to stay proceedings based on the ongoing criminal proceedings, and petitioners' motion to

---

[4]  The press release triggered extensive media coverage, including coverage by the Wall Street Journal, the CBS Morning News show and National Public Radio. *Accessible at* http://www.wsj.com/articles/justice-department-sues-surgeon-aria-sabit-over-spinal-operations-1410305569?tesla=y;  http://www.cbsnews.com/news/federal-prosecutors-target-physician-owned-companies-that-profit-from-unnecessary-procedures/; http://www.scpr.org/news/2014/09/23/46884/feds-link-former-ventura-doctor-to-kickbacks-unnec/.

dismiss the complaint based on DOJ's misuse of the recording and other facts that interfered with the truth finding process and denied petitioners due process rights.

DOJ supported its motion for a stay with a December 22, 2014 *ex parte* application for *in camera* review of a declaration of one of DOJ's Criminal Division's attorneys. District Court doc. 29.[5] On January 12, 2015, DOJ filed another *ex parte* application for the *in camera* review of another declaration and unidentified exhibits. District Court doc. 47. And, again on January 26, 2015, DOJ filed an *ex parte* application for leave to file two more declarations for the Court's *in camera* review. District Court doc. 58. Petitioners strenuously objected to such filings contending that they violated the Federal Rules of Civil Procedure, the Court's local rules, and due process of the law and constituted yet another reason to grant petitioners' December 22, 2014 motion to dismiss . District Court docs. 30, 49, and 59.

Notwithstanding that petitioners had appeared in the civil case on September 12, 2014, (District Court doc. 7) requiring the issuance of a scheduling order by December 12, 2014, the Court did not issue such an order until February 24, 2015 setting a scheduling conference for May 7, 2015. District Court doc. 64.

---

[5] To avoid making the accompanying exhibits too voluminous, petitioners do not attach each cited document. Rather, they refer to the District Court's file by the clerk's document number ("doc. _") on the docket sheet.

10

Pursuant to the February 24, 2015 scheduling order, counsel for the various parties developed and filed a proposed discovery plan. Doc. 64. Pursuant to that plan, petitioners served a request on DOJ to produce the July 26, 2011 recording pursuant to Fed.R.Civ.P. 26(b)(3), which requires the production of parties' prior statements. DOJ responded by refusing to produce the recording, asserting among other reasons, the investigative file and confidential informant privileges. Petitioners then filed a motion to compel the production of the recording on April 28, 2015. District Court doc. 74.

Two days later, on April 30,2015, the Court issued the one-page order at issue here (Exhibit A). As indicated in the Introduction, the Court granted DOJ's December 22, 2014 motion and *ex parte* application for a stay of proceedings and "vacated" the four other motions, including petitioners' December 22, 2014 motion to dismiss and petitioners' April 28, 2015 motion to compel production of the recording.

Petitioners seek review only of the District Court's ruling vacating the December 22, 2014 motion to dismiss. Exhibit H.

11

## V.   THIS COURT SHOULD ISSUE A WRIT REQUIRING THE DISTRICT COURT TO DISMISS THE COMPLAINT

### A.   The Standards for Granting Mandamus Relief

Petitioners are aware of the substantial burden they bear in convincing this Court to intervene at this stage of these proceedings.  Yet, they contend they satisfy their burden here because of the compelling circumstances discussed below.

This Court analyzes the following five factors in determining whether to grant extraordinary relief in a mandamus proceeding:

1.      Whether the petitioners have other means, such as an appeal, to obtain the desired relief;

2.      Whether petitioners will be damaged or prejudiced in any way not correctable on appeal;

3.      Whether the district court is clearly erroneous as a matter of law;

4.      Whether the District Court's order raises new and important problems or issues of first impression; and

5.      Whether the District Court's order is an oft repeated error or manifests a persistent disregard of the federal rules.

*Perry v. Schwarzenegger,*  591 F. 3d 1147, 1156 (9th Cir. 2010).  *See also Bauman v. U.S. Dist. Court,* 557 F. 2d 650, 654-55 (9th. Cir. 1977).

These factors are guidelines and not every factor need be present at once. *Perry,* 591 F. 3d at 1156. *See also Mortgages, Inc. v. United States Dist. Court,* 934 F. 2d 209, 211 (9th Cir. 1991), in which mandamus relief was granted in a FCA case. Petitioners contend below that they meet four of the five criteria.

### B. The Applicable Fundamental Principles of Law

Before discussing how this petition satisfies the above criteria for granting mandamus relief, some discussion of the fundamental principles at issue is required.

DOJ actively and aggressively investigates and pursues criminal and civil actions to deter and remedy fraud in government healthcare programs, especially the Medicare and Medicaid programs. The FCA is DOJ's vehicle of choice for civil enforcement actions because of its treble damages and civil penalties provisions. In FY 2014, the overwhelming majority of the sums collected by the federal government under the FCA, $2.22 billion out of a total of $2.3 billion, came from FCA *qui tam* actions. The number of such whistleblower actions is on the rise. DOJ's Criminal Division will be "stepping up" its analysis of FCA *qui tam* cases to look for potential criminal prosecutions.[6]

Parallel criminal and civil proceedings, such as those here, could easily become the rule in Healthcare fraud enforcement actions, especially in highly

---

[6] These facts were announced in a September 17, 2014 speech given during an FCA conference by Leslie Caldwell, Assistant Attorney General, *accessible at* http://www.justice.gov/criminal/pr/speeches/2014/crm-speech-140917.html.

publicized cases such as this one. This Court has emphasized that in such "highly publicized cases," involving parallel proceedings, the courts "need to be especially careful that undue consideration is not given a proceeding's impact on the public" in response to a perceived "crisis," and concern for public deterrence of an enforcement proceeding "must not be allowed to override the individual defendant's due process rights." *Keating v. Office of Thrift Supervision,* 45 F. 3d 322, 326 (9th Cir. 1994).

Among those rights is the protection of a person's reputation. A defendant's reputation for honesty is especially important in the healthcare field. *See Conant v. Walters,* 309 F. 3d 629, 640 (9th Cir. 2002), where, in a concurring opinion, then Chief Judge Kozinski points out how important a reputation for integrity is to a physician and how a doctor's career can be effectively destroyed merely by the fact that a government body is investigating his or her practice. The same is true for persons who interact with doctors as part of their professional careers, such as petitioners. In fact, "the mere mention of an individual's name in a law enforcement file could engender comment and speculation and carries a stigmatizing connotation." *Perrone v. F.B.I.* 908 F. Supp. 24, 26 (D.D.C. 1995).

As discussed above and further below, the DOJ Civil Division has highly publicized DOJ's criminal investigation of petitioners by flaunting excerpts from the July 26, 2011 recording in its September 8, 2014 complaint and press release,

which has destroyed petitioners Pike's and Berry's reputations and businesses. And, at the same time, DOJ has used tactics that increase the suspicion about petitioners, such as filing *ex parte, in camera* declarations and exhibits with the Court, while depriving petitioners of an opportunity to meaningfully and timely refute the allegations of wrongdoing, including criminal conduct.

## C. Petitioners Have No Means Other than this Petition to Obtain the Relief Requested

In their December 22, 2014 motion to dismiss, petitioners asked the Court to dismiss DOJ's civil complaint because DOJ's actions regarding the July 26, 2011 audio recording violated fundamental notions of fair play, irreparably damaged the truth-finding process necessary for petitioners to receive a fair trial and deprived petitioners of due process of the law. Doc. 31, page 2.[7]

The District Court "vacated" the motion to dismiss in its April 30, 2015 order. Under the circumstances here, vacating the motion is tantamount to denying it because as long as the complaint remains, petitioners will be irreparably harmed.

---

[7] Petitioners pointed out that under its inherent authority to manage its own affairs, a court may dismiss a complaint where the defects identified affect the integrity of the judicial process. Indeed, in *United States v. Quest Diagnostics,* 734 F. 3d 154, 166 (2nd Cir. 2013), the court upheld the district court's dismissal of a FCA *qui tam* action because the defects in that case, a violation of the attorney client privilege by the relator, went directly to the integrity of the judicial process. **Here, the circumstances are such that the District Court had a mandatory duty to dismiss the case.**

Petitioners know of no authority allowing a party to appeal a vacated motion to dismiss. Since denials of motions to dismiss are not appealable and are thus subject to review by mandamus, *Batzel v. Smith,* 333 F. 3d 1018, 1023 (9th. Cir. 2003), they assert that "vacated" motions are also entitled to mandamus review.

> **D.** **The Ongoing Irreparable Harm Being Suffered by Petitioners Cannot Be Remedied on Appeal**

Once DOJ filed its civil complaint and issued its press release on September 8, 2015, the allegations about the secret recording and selected excerpts from it became the subject of considerable media coverage. As indicated in footnote 4, the Wall Street Journal, the National Public Radio network and the CBS Morning Show reported on the allegations, including the July 26, 2011 audio recording. The DOJ press release (Exhibit F) revealed that the Reliance owners were recorded telling a potential investor that Reliance was formed as part of a plan to "get around" the AKS and that Reliance pays its physician investors enough in the first month or two to "put their kids through college."

Not surprisingly, the adverse publicity quickly made petitioners "pariahs" in the health care industry, including among some of their existing and prospective hospital clients/customers. And, doctors became reluctant to order Reliance devices because they had heard about the government's allegations of wrongdoing and had been very concerned about "guilt by association." Reliance's business and

revenues markedly decreased as news of the civil complaint and the recording spread. For example, on September 11, 2014, Reliance's owners were "disinvited" by a hospital in Denver from making a product presentation. Reliance's largest contracting machine shop stopped doing business with Reliance upon learning of the press release. These and additional details are contained in petitioner Pike's December 22, 2014 declaration, Exhibit D.

In January 2015, petitioners' banks stopped their business relationships with petitioners, terminating all of their bank accounts, including Pike's and Berry's families' personal bank accounts, based on a "confidential risk assessment" conducted by the banks. The timing is such that this action had to have been triggered by either or both direct communications about the civil action with the DOJ and/or adverse media reports of the civil lawsuit. As a result, petitioners Pike and Berry not only have had trouble conducting their businesses but also had to become concerned about their financial ability to care for their families. Supplemental Pike declaration, paragraphs 2-4, Exhibit I.

Petitioners believe they fully complied with all relevant laws, including the AKS, in forming and operating Reliance and their other companies. To assure such compliance, they followed the advice of their outside healthcare counsel. They further believe that they can easily show how DOJ has taken excerpts from

the recording out of context to demonize them. Pike December 22, 2014 Declaration, paragraphs 8 and 9, Exhibit D.

If and when petitioners are ultimately given the recording, they will be able to show their good faith attempt to comply with the AKS based on an accurate and complete recitation of the discussion recorded on July 26, 2011. *Id* at paragraph 9. However, until they are given the recording and an opportunity to clear their names in court, they will continue to be irreparably harmed so long as the civil complaint remains on file. And none of the harm suffered thus far will be corrected in an appeal of any final decision in this case.

**E.**      **The District Court Erred by Vacating the Motion to Dismiss Rather than Granting It**

Petitioners Berry's and Pike's reputations, businesses, and personal lives have suffered severely since DOJ's Civil Division went public with its allegations of wrongdoing in September 2014. While some such harm can be expected in any high profile enforcement action, DOJ employed delay and "stonewalling" tactics here that go well beyond those permitted under the applicable laws, including depriving petitioners of a timely and meaningful opportunity to be heard regarding the allegations in the complaint based on quoted excerpts from the July 26, 2011 audio recording. Under these compelling circumstances, dismissal was mandatory, not discretionary.

The wrongful conduct by DOJ's Civil Division includes (1) conducting a deposition of Mr. Pike in March 2013 based on the recording without revealing the existence of the recording and a criminal investigation based on the recording; (2) going public in September 2014 with selective excerpts from the recording without giving a copy of the recording to petitioners; (3) filing the civil action knowing that its criminal division was conducting an investigation the fact of which DOJ could then use to stay discovery and delay releasing the recording while petitioners continue to be deprived of a forum for refuting the allegations against them; and (4) filing a series of *ex parte, in camera* submissions which gave DOJ an opportunity to malign petitioners without petitioners being able to correct or respond to misstatements.[8]

These tactics violate a series of fundamental principles of fairness beginning with the very first Rule of the Federal Rules of Civil Procedure. Rule 1 requires all of the other federal rules to be construed and administered to secure the just, speedy, and inexpensive determination of every civil action. DOJ's tactics are calculated to be unjust and to impede a speedy and inexpensive determination of the merits of the civil complaint.

---

[8] Where the government is the party with unclean hands, the reasons for refusing it relief is even more persuasive than when the party is a private litigant. *Olmstead v. United States,* 277 U.S. 438, 483 (1928), Dissenting opinion of Justice Brandeis. In a "government of laws, existence of the government will be imperiled if it fails to observe the laws scrupulously." *Id.* at 485.

Similarly, Rule 26(b)(3)(C) allows a party "without the required showing" to obtain the party's prior statement, including any recording of such a statement. No exceptions to the rule requiring production exist for prior statements surreptitiously recorded without the consent of the party. In fact, even when a party would like to delay producing a recording until after the party deposes the person in the recording, such delay is not appropriate where the party seeks to use such a recording as substantive evidence. *See Costa v. Afgo Mechanical Services, Inc.*, 237 F.R.D. 21, 25-26 (E.D. N.Y. 2006), where the court canvasses the applicable case law.

Here, DOJ's Civil Division has repeatedly refused to produce the recording even though it deposed Mr. Pike about the recording in March 2013 and even though it published its own self-serving characterizations of excerpts from it when it filed its civil complaint and issued its press release. Rather than producing the recording as part of its initial disclosures or in response to petitioners' request for production of documents, it has chosen to assert privileges which it obviously waived as a result of its prior disclosures of parts of it.

If DOJ did not want to reveal the content of the recording during its criminal investigation, it should not have gone public with excerpts from it in September 2014. Indeed, it should not have filed its civil complaint in the first place, if it knew it was going to move to stay the case because of its criminal investigation.

DOJ's tactics regarding the recording are improper and inconsistent with the truth finding process. Secretly recorded prior statements are not supposed to be used to "ambush," a party. This is why Rule 26(b)(3)(C) requires the production of such prior statements and why the case law requires such disclosure before depositions are taken. Civil trials and discovery are not a game of "gotcha." Rather the process is supposed to be a fair search for the truth. *See Greater New Orleans Fair Housing Action Center v. Ditta,* civ. action no. 13-511, 2013 WL 5797728 (E.D. La. October 28, 2013) at *2-*3.

Moreover, DOJ's use of *ex parte, in camera* submissions is also contrary to the truth finding process and completely contrary to the notion that trials should be open to public and opposing parties should be given copies of all communications made by a party to a court.

A request for a court order must be made by a motion. Fed.R.Civ.P. 7(b). When a party proceeds by *ex parte* application, specific procedures must be followed and a sufficient showing must be made to allow the party to jump to the front of the line. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488 (C.D.Cal. 1995) and Central District Local Rules 7-19 and 79-5 (pertaining to *in camera* submissions). These procedures were not followed by DOJ in any of its *ex parte* applications in this case.

1185328.1

21

Yet, the District Court issued its April 30, 2015 rulings based, in part, on the December 22, 2014 *ex parte, in camera* submission (Doc. 29). Relying on evidence considered *in camera* is "fundamentally inimical to due process." Only the "most exceptional circumstances can justify determinations based upon documents which interested parties may not examine." *Briscoe v. Kusper,* 435 F. 2d 1046, 1057 (7th Cir. 1971). Nothing in DOJ's or the Court's public filings constitutes such exceptional circumstances.[9]

DOJ's *in camera* submissions are also inconsistent with the courts' obligation to protect the public's right to access to the judicial process under the First Amendment and the common law. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (common law right of access to judicial records and documents) and *Press-Enter. Co. v. Super. Ct. of Cal.,* 464 U.S. 501, 510 (1984) (presumption of public access to the activities of the judiciary under First Amendment is only overcome in the rarest and most compelling circumstances.)

In reality, DOJ's Civil Division has done nothing meaningful to move its civil case along after filing it. To the contrary, it has done everything possible to

---

[9] DOJ purports to be most concerned about protecting its confidential source of the recording as a way to justify withholding the recording. Such justification is bogus given the fact that DOJ's Civil Division revealed the date and other circumstances of the recording in its civil complaint. Thus, petitioners needed only to consult their appointment calendars and other documents for July 26, 2011 to find out who the source is.

prevent the civil case from progressing. Parties to a civil action have a due process right to have the merits of their civil dispute resolved within a reasonable period of time. *See Wehling v. Columbia Broad Sys,.* 608 F. 2d 1084, 1087-88 (5th Cir. 1979), where the court confirmed the due process right of a party in a civil action to a judicial determination of the issues in the case notwithstanding a parallel criminal investigation, the circumstance here. DOJ's tactics are violating petitioners' due process right to reach the merits of the issues raised by its civil complaint within a reasonable period of time.

DOJ's issuance of its September 8, 2014 press release also independently triggered petitioners' due process rights to be heard in a meaningful and timely manner regarding the allegations of wrongdoing against petitioners. Specifically, DOJ interfered with petitioners' liberty interests by publishing its fraud allegations against them.

The Due Process Clause's liberty provision must be construed broadly. Thus, where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, timely notice and an opportunity to be heard are essential elements of the person's due process rights. *Board of Regents v. Roth,* 408 U.S. 564, 572-73 (1972) and *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971).

This Court has long recognized this liberty interest. Where the government levels a charge that impairs the person's reputation for honesty or morality, due process applies if the accuracy of the charge is contested by the person, if the government publicly discloses the charges, and if the charge is made in connection with the alteration of a right or status recognized by the law. In such a situation, the person must have an opportunity "to confront all the evidence against him." *Vanelli v. Reynolds,* 667 F. 2d 773, 777-78, 780 (9th Cir. 1982). *See also Erickson v. United States ex rel. Dept't of Health & Human Servs.,* 67 F. 3d 858, 862-63 (9th Cir. 1995), where the Court recognized that a doctor excluded from the Medicare Program had a protected liberty interest in his reputation but concluded that the doctor received all the process he was due when he was able to contest the charges against him in a previous criminal trial.

Here, DOJ has published the most egregious allegations of wrongdoing against petitioners, some of which are based on excerpts from the recording that DOJ refuses to show the petitioners. And, unlike in *Erickson,* petitioners have never been given a chance to address, refute and respond to such allegations. Instead, they have been forced to endure the destruction of their reputations and businesses without any recourse while DOJ pursues its criminal investigation. Petitioners look forward to an opportunity to show that the reckless allegations against them are unfounded.

Although petitioners are not government employees, as in *Vanelli,* and have not been excluded from Medicare, as in *Erickson,* their status under the law has indeed been adversely affected once DOJ went public with its allegations. Pike's and Berry's businesses and their ability to earn a living have both been destroyed by the publication of the allegations against them. Had a private party destroyed petitioners' businesses and disabled them from earning a living by accusing them of being "fraudsters," the law would have certainly protected them by requiring the private party to compensate them for such loss if they could prove they were not fraudsters. Similarly, their bank relationships were protected under contract law. Additionally, the same day DOJ issued its press release, September 8, 2014, petitioners' status under the law changed materially as a result of the filing of the FCA complaint. In short, petitioners became defendants in federal lawsuit.

For the foregoing reasons, the Court should have dismissed the civil action rather than vacate petitioners' motion. At a minimum, the Court should have dismissed the action without prejudice during the pendency of the criminal investigation. It should not have allowed DOJ to imprison petitioners in a lawsuit where they are charged with violating the criminal law, the AKS, without petitioners being given an opportunity to see the evidence against them – *i.e.,* the July 26, 2011 recording, and to respond to the same.

### F. The District Court's Ruling Raises Important Issues About Parallel Proceedings in Health Care Fraud Investigations

As pointed out above, DOJ is likely to initiate more parallel investigations of suspected healthcare fraud cases in the future since the Criminal Division is now going to monitor the filing of *qui tam* actions under the FCA. DOJ's Civil Division's tactics here, especially its arbitrary and improper use of excerpts from the audio recording, require this Court to confirm the limits on DOJ's authority to conduct parallel proceedings in a manner consistent with the Federal Rules of Civil Procedure, notions of fundamental fairness and due process of the law.[10]

## VI. CONCLUSION

For the foregoing reasons, this Court should grant the petition for writ of mandamus and order the District Court to dismiss the civil action against petitioners.

---

[10] Petitioners do not believe the order is an oft repeated error or manifests a persistent disregard of the federal rules.

Dated:  May 7, 2015　　　　　　**HOOPER, LUNDY & BOOKMAN, P.C.**
　　　　　　　　　　　　　　　PATRIC HOOPER


By: _____s/ Patric Hooper_____
Attorneys for Petitioners
RELIANCE MEDICAL SYSTEMS, LLC;
APEX MEDICAL TECHNOLOGIES, LLC;
KRONOS SPINAL TECHNOLOGIES, LLC;
BRET BERRY and ADAM PIKE

## STATEMENT OF RELATED CASES

No other cases in this Court are deemed related to this case pursuant to

Circuit Rule 28-2.6.

**CERTIFICATION OF COMPLIANCE WITH
TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS
[FED. R. APP. P. 32(a)(7)(C)]**

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,913 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using MS-Word in 14-point Times New Roman font type.

Dated:  May 7, 2015

                                        s/ Patric Hooper
                                        _____
                                        **PATRIC HOOPER**

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1875 Century Park East, Suite 1600, Los Angeles, CA 90067-2517.

On May 7, 2015, I served true copies of the following document(s) described as **PETITION FOR WRIT OF MANDAMUS DIRECTED TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA** on the interested parties in this action as follows:

<b>SEE ATTACHED SERVICE LIST</b>

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hooper, Lundy & Bookman, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 7, 2015, at Los Angeles, California.

Patti Newler

1185328.1

**SERVICE LIST**
**United States of America v. Reliance Medical Systems, LLC, et al.**
**CV-14-6979 DDP PJWx**

The Honorable Dean D. Pregerson
United States District Court Judge
United States District Court for the
   Central District of California
Courtroom 3
312 North Spring Street
Los Angeles, CA  90012-4793

David M. Finkelstein, Esq.             *Attorneys for Real Party In Interest*
Arthur S. Dio, Esq.                     *UNITED STATES OF AMERICA*
Rohith V. Srinivas, Esq.
U.S. Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 616-2971
E-Mail:  david.m.finkelstein@usdoj.gov,
arthur.di.dio@usdoj.gov,
rohith.v.srinivas@usdoj.gov

Jonathan B. Frank, Esq.          *Attorneys for Real Party In Interest*
Of Counsel to Jackier Gould, P.C.   *ARIA O. SABIT, M.D.*
121 West Long Lake Road, 2nd Floor
Bloomfield Hills, MI  48304
Tel:  (248) 433-2589
E-Mail:  frank@jackiergould.com

Louis H. De Haas, Esq.           *Attorneys for Real Party In Interest*
La Follette, Johnson De Hass, Fesler &   *ARIA O. SABIT, M.D.*
   Ames
865 S. Figueroa, 32nd Floor
Los Angeles, CA  90017
Tel:  (213) 426-3600
E-Mail:  scrawford@ljdfa.com,
ldehaas@ljdfa.com

1185328.1

Michael C. Gross, Esq.
Gross & Esparza, PLLC
106 S. St. Mary's, Suite 260
San Antonio, TX  78205
Tel:  (210) 354-1919
E-Mail:  lawofcmg@gmail.com

*Attorneys for Real Party In Interest*
*JOHN HOFFMAN*

1185328.1